UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CBS SPORTS INC., <br><br> Plaintiff, <br><br> v. <br><br> CONTEMPORARY SERVICES CORPORATION, <br><br> Defendant. | Civil Action No. 19-cv-7240 <br><br> **COMPLAINT** <br><br> JURY DEMAND |

Plaintiff CBS Sports Inc. ("CBS" or "Plaintiff"), through its attorneys, Leader Berkon Colao & Silverstein LLP, as and for its Complaint against Defendant Contemporary Services Corporation ("CSC" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. This is a breach of contract and negligence action by CBS to recover approximately one million dollars in damages arising from CSC's negligence and breach of its agreement to provide adequate and appropriate security services during the 2019 PGA Championship (the "PGA Championship") taking place at the Bethpage Black golf course in Farmingdale, New York.

2. CBS engaged CSC to provide adequate and appropriate security services for its television compound at the PGA Championship, including overnight coverage of the area. CSC's security coverage, however, fell woefully short of its obligation, and as a result, on May 20, 2019, one or more individuals stole at least sixty-four cameras and related equipment from a CBS trailer on the compound.

3. Pursuant to the agreement between CBS and CSC and the duty owed to CBS by CSC, this area was unquestionably to be properly guarded by CSC during that period. Upon

information and belief, one or more CSC personnel even witnessed part of the theft as it was occurring and did not intervene.

4.  Due to the theft on CSC's watch, CBS has paid $987,243.74 to replace the stolen equipment. By failing to adequately and appropriately perform the security services for which it was hired, and by acting negligently, carelessly, and wrongfully, CSC breached its agreement with CBS. CSC's negligence and failure to exercise due care in its performance of security services caused the theft to occur. As a result of CSC's negligence and breach of contract, CBS has sustained almost one million dollars in damages.

## PARTIES

5.  Plaintiff CBS Sports Inc. is a corporation organized under Delaware law with its principal place of business at 51 West 52nd Street, New York, New York 10019. CBS Sports is a television sports broadcaster.

6.  Defendant Contemporary Services Corporation is a corporation organized under California law with its principal place of business in Northridge, California. CSC is an event management company that provides security and crowd management services at sporting and entertainment venues. CSC is authorized to conduct business in New York.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest or costs, and the suit is between citizens of different States. For diversity purposes, CBS is a citizen of Delaware and New York. CSC is a citizen of California.

8. This Court has personal jurisdiction over CSC because it maintains an office, and conducts business, in New York, and the contract and related events giving rise to this action occurred in New York. *See* Fed. R. Civ. P. 4(k)(1)(A); N.Y. C.P.L.R. 302.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because CSC resides in this judicial district, and because this judicial district is where a substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL ALLEGATIONS

**A.     CBS Engages CSC to Provide Security Services**

10. In early 2019, CBS prepared to air live coverage of the PGA Championship, which was broadcast from May 16, 2019 through May 19, 2019 from the Bethpage Black golf course in Farmingdale, New York.

11. In order to protect its valuable television equipment and to control access to restricted areas during the tournament, CBS contracted with CSC to provide adequate and appropriate security coverage before, during, and after the event.

12. Although the parties did not execute a formal written contract, CBS engaged CSC via an exchange of email correspondence and oral communications. CBS and CSC entered into a bargained-for agreement that CSC would provide adequate and appropriate security services during the 2019 PGA Championship. The agreement is evidenced by, among other things, email correspondence, oral communications, the fact that CSC has sent CBS an invoice for services rendered, and CSC's partial or attempted performance.

13. CSC owed a duty to CBS to exercise reasonable care in its performance of security services so as not to create an unreasonable risk of damage or theft to CBS's property.

14. On or about April 2, 2019, a production manager for CBS Sports contacted CSC to specifically request overnight security coverage of CBS's "TV compound" at the Bethpage Black golf course.

15. The next day, on April 3, 2019, Sergio Caraciolo, CSC's New York City branch manager, confirmed to CBS that he "received [CBS's] request for overnight coverage beginning on April 16th at 5pm," and that security would "be covered without issue."

16. CSC knew and understood that CBS kept valuable equipment on the premises.

17. Pursuant to a "PGA Compound Security Schedule" exchanged between CBS and CSC, dated April 22, 2019, CSC agreed to provide security guards for twenty-four-hour security coverage, including on Sunday, May 19, 2019 and Monday, May 20, 2019.

18. CSC commenced service on April 16, 2019. CSC agreed to provide security through May 23, 2019.

19. The security services CSC provides involve preserving public safety. The nature of CSC's services, including its coverage of the PGA Championship, significantly affects the public interest, as well as the safety of individuals and property at the large entertainment venues it agrees to secure.

20. CSC itself proclaims on its website that it "has received the highest level of certification in protection awarded by the U.S. Department of Homeland Security." It also touts on its website: it is a "pioneer[ing]" and "expert" security services company that has served at least 50 million patrons annually and "is committed to . . . providing a safe and enjoyable experience for all event patrons." It provides this safety, it says, by "develop[ing] the concept of peer group security techniques, and through nearly five decades of continual refinement and evolution." As a result, CSC says that it has "remained the leader in the . . . event security

industry," staffing events "as small as one guest to multi-day events hosting hundreds of thousands."

21. Accordingly, CSC owed CBS a duty to act with reasonable care and to perform its security services without negligence, carelessness, or other wrongful acts/omissions.

**B.  Nearly $1 Million of Equipment Is Stolen Under CSC's Watch**

22. On or about May 20, 2019, sometime between midnight and 7:00 AM, one or more individuals stole a large amount of camera equipment from a "mini trailer" located on the TV compound.

23. Upon information and belief, on or around the time of the theft, a CSC security guard saw individuals with large black duffel bags near the "mini trailer."

24. The black duffel bags stood out because they appeared clean, even though it had been raining and the ground was muddy.

25. Despite witnessing this occurrence, CSC did not intervene in any way.

26. Upon information and belief, the CSC security guard saw the individuals packing the duffel bags full of equipment into vehicles.

27. At no time did CSC intervene to stop the theft from taking place or call the police.

28. On the morning after the theft, broken tripods were discovered near the trailer where the stolen equipment was stored.

29. The cameras appeared to be broken off from the tripods rather than released using the proper lever.

30. The thieves apparently had difficulty in removing the cameras from their tripods and would have needed substantial time to steal a large number of separate pieces of bulky camera equipment in this manner.

31.     Despite the parties' agreement and CSC's duty to exercise reasonable care, CSC failed to adequately and appropriately secure the TV compound and acted with negligence in performing security services.

32.     CSC was negligent and careless in its acts and/or omissions by allowing criminals to enter the compound and steal valuable property.

33.     Among other things, CSC failed to adequately and appropriately patrol the premises for suspicious or improper activity, failed to make adequate and appropriate rounds of the premises, failed to adequately and appropriately watch for, observe, recognize, or detect suspicious or improper activity on the compound, failed to act or take appropriate measures in response to suspicious or improper activity on the compound, failed to protect, defend, or safeguard the compound and trailer, failed to ensure only authorized personnel were present on the compound, and failed to intervene or prevent the theft.

34.     All of the above failures are all the more glaring given that the theft occurred overnight or in the early morning when it should have been even more obvious.  Additionally, the theft—including the act of dismantling dozens of cameras and breaking them off their tripods—would have created substantial noise and should have attracted the attention of CSC personnel.

35.     CSC had promised to guard the compound overnight and to do so without incident.  CSC also owed CBS a duty of care in performing its work and protecting CBS's property from criminal activity.  Nevertheless, they did not intervene.

36.     Upon information and belief, CSC failed to meet the very basic responsibilities of security services, such as adequately training its employees guarding the TV compound to respond to suspicious or improper activity, providing instructions on how to respond or intervene

to suspicious activity, and generally failing to prepare its employees to handle the contingencies of overnight security coverage.

37. Upon information and belief, CSC failed to hire qualified security guards who were adequately trained to provide the necessary security services.

C. **CBS Discovers the Stolen Equipment and Informs Police**

38. Upon discovery of the theft by CBS on the morning of Monday, May 20, 2019, the police were called by CBS, and the Suffolk County Police Department arrived to investigate the scene of the theft.

39. The police later prepared an incident report, which stated that there was no surveillance footage of the incident and that no witnesses were able to provide a description of the suspects.

40. The incident report lists two offenses, Burglary 3 and Grand Larceny 2.

41. The incident report further states: "COMPLAINANT REPORTS OF MISCELLANEOUS CAMERA EQUIPMENT BEING STOLEN BY AN UNKNOWN SUSPECT FROM A TRAILER."

D. **CSC Failed to Provide Adequate Security Services under the Contract**

42. CSC breached its agreement to cover the compound "without issue."

43. The theft would have been prevented had CSC fulfilled its obligations under the contract.

44. By failing to adequately and appropriately secure the premises, as was required under the parties' agreement, CSC's breach allowed thieves to enter the premises and make off with almost a million dollars of equipment.

45. The risk of theft was one of the central reasons CBS entered into a contract with CSC to secure the premises overnight. The failure to protect the premises from theft was a material breach of the contract.

46. CSC materially breached its contract to provide adequate and appropriate security services before CBS was obligated to tender payment under the contract.

47. Prior to CSC's breach of the contract, CBS satisfied all its required obligations under the contract.

E. **CSC Failed to Exercise Reasonable Care and Was Negligent**

48. CSC failed to utilize due care and was negligent in its performance of security duties, resulting in CBS's losses.

49. CSC's negligent performance of its security services as described above breached its duty of reasonable care in securing the compound and the "mini-trailer" that contained the stolen equipment.

50. CSC knew that its failure to exercise due care in the performance of its security services could result in the theft of CBS's property by a third party.

51. As a result of CSC's negligence, carelessness, and other wrongful conduct, CBS's property was stolen, causing damages of $987,243.74.

**FIRST CAUSE OF ACTION**
**Breach of Contract**

52. Plaintiff re-alleges and incorporates by reference the allegations contained in all previous paragraphs of this Complaint.

53. The parties' had a valid and enforceable contract, entered into between Plaintiff and CSC in or around April 2019, pursuant to which, CSC agreed to provide adequate and appropriate overnight security services—including adequately and appropriately patrolling the

premises for suspicious or improper activity; making adequate and appropriate rounds of the premises; adequately and appropriately watching for, observing, recognizing, and detecting suspicious or improper activity on the compound; acting and taking appropriate measures in response to suspicious or improper activity, protecting, defending, and safeguarding the compound and trailer; ensuring only authorized personnel were present on the compound; and appropriately intervening, preventing, and reporting any suspicious activity—at the Bethpage golf course during the PGA Championship.

54. The contract between CBS and CSC required CSC to exercise reasonable care in protecting the property on the agreed-upon premises. CSC knew and understood that CBS kept valuable equipment on the premises. In fact, this was one of the central reasons CBS entered into the contract.

55. CSC failed to meet and satisfy the aforementioned obligations and other duties under the agreement when it failed to prevent or intervene in the theft of the camera equipment.

56. CSC breached the contract by, among other things:

   a. failing to adequately and appropriately patrol the premises for suspicious or improper activity;

   b. failing to make adequate and appropriate rounds of the premises;

   c. failing to adequately and appropriately watch for, observe, recognize, or detect suspicious or improper activity on the compound;

   d. failing to act or take appropriate measures in response to suspicious or improper activity on the compound;

   e. failing to protect, defend, or safeguard the compound and trailer, and

   f. failing to intervene or prevent the theft.

9

57. CSC also breached the contract by failing to adequately and appropriately secure the premises, to properly train and instruct its employees on how to appropriately identify and intervene in suspicious activity, to protect the compound from unauthorized individuals, to patrol the area in a systematic or thorough manner, and ultimately to prevent the theft of valuable equipment.

58. CSC's breach of its security obligations was a material breach of the parties' contract. The protection of valuable equipment on the TV compound was a central reason for CBS to contract with CSC.

59. CSC's breach of the agreement, by not providing adequate and appropriate security services as contemplated by the contract, resulted in the theft of almost one million dollars' worth of cameras and related equipment.

60. CSC's material breach effectively terminated the contract before CBS was obligated to tender its payment to CSC under the contract. Prior to CSC's material breach, CBS performed and satisfied all of its required obligations under the contract.

61. Plaintiff has suffered damages from CSC's breach of the agreement, including, but not limited to the replacement cost of $987,243.74 for the stolen equipment.

## SECOND CAUSE OF ACTION
### Negligence

62. Plaintiff re-alleges and incorporates by reference the allegations contained in all previous paragraphs of this Complaint.

63. CSC owed a duty to Plaintiff to exercise reasonable care in the performance of security services, including adequate and careful monitoring of the area, observation and intervention of any suspicious or potentially suspicious activity, and the skillful, professional training of its guards.

64. Plaintiff suffered damages due to the theft of almost one million dollars' worth of cameras and related equipment on CSC's watch.

65. The theft and resulting damages sustained by Plaintiff were caused by the negligent, careless, and wrongful acts and/or omissions of CSC by:

    a. failing to adequately and appropriately patrol the premises for suspicious or improper activity;

    b. failing to make adequate and appropriate rounds of the premises;

    c. failing to adequately and appropriately watch for, observe, recognize, or detect suspicious or improper activity on the compound;

    d. failing to act or take appropriate measures in response to suspicious or improper activity on the compound;

    e. failing to protect, defend, or safeguard the compound and trailer;

    f. failing to ensure only authorized personnel were present on the compound;

    g. failing to hire competent guards/employees to protect the compound;

    h. failing to take all precautions necessary under the circumstances to prevent an unreasonable risk of harm to the property of Plaintiff;

    i. failing to intervene or prevent the theft; and

    j. otherwise failing to exercise reasonable care under the circumstances.

66. As a direct and proximate result of the above-referenced negligence, carelessness, and wrongful acts of CSC, thieves were able to steal Plaintiff's property, causing Plaintiff almost one million dollars in damages. These damages occurred solely by reason of CSC's negligence, carelessness, and other wrongful conduct.

67. By failing to exercise due care as described above, CSC should have known that its negligence was likely to result in the destruction or theft of Plaintiff's property by a third party.

68. The theft and resulting damages occurred without any fault on the part of the Plaintiff contributing thereto.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant granting:

A. An award of compensatory damages in an amount to be determined at trial, but not less than $987,243.74, plus costs, including reasonable attorneys' fees, and interest; and

B. Any other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 26, 2019

    Respectfully submitted,

    LEADER BERKON COLAO & SILVERSTEIN LLP

    By: /s/ Glen Silverstein
    GLEN SILVERSTEIN
    630 Third Avenue, 17th Floor
    New York, New York 10017
    Telephone: (212) 486-2400
    Fax: (212) 486-3099
    gsilverstein@leaderberkon.com

    *Attorneys for Plaintiff CBS Sports Inc.*